PeaesoN, J.
 

 "Where matters of controversy &re submitted to arbitration by agreement of the parties, they substitute a tribunal of their own choosing in place of the ordinary courts of the country. "Whether the motive be to save expense or to avoid giving notoriety to the “ actings and doings” of the par
 
 *468
 
 ties, or because they suppose the matters are so complicated, that a court aud jury cannot investigate them so as to arrive at justice, or because they desire the controversy to be adjusted upon principles different from those adopted in a court of law or of equity, and more consonant (as they imagine) to substantial justice, or whatever else the motive may be, is immaterial. The tribunal so constituted hy them is independent in its action. Its decision cannot be appealed from, nor can it be rescinded either hy a court of law or equity.
 

 "Where a suit is pending, and the matter in controversy is referred to arbitration as a rule of court, the action of the arbitrators is not entirely independent, for it is resorted to as ancillary, or in aid of the court by whose judgment it is to be carried into effect, and on that account is, in some degree, subject to the supervision of the Court. • This mode of arbitration differs essentially from the former, and some conflict has been allowed to creep into the eases by not keeping the distinction steadily in view.
 
 Devereux
 
 v.
 
 Burgwin,
 
 11 Ire. 490, and
 
 Eaton
 
 v. Eaton, 8 Ire. Eq. 102, are instances of the former. The manner in which an award, made by tribunals of this kind, is treated by the courts, both of law and equity, is therein fully discussed.
 

 The submission in this case was by agreement of the parties
 
 in fans.
 
 The defendant has instituted an action, at law, upon the bond executed by the plaintiffs to perform the award, and they seek the interference of this Court to enjoin him from proceeding at law.
 

 The only ground upon which they can ask this relief is, that it is against conscience for the defendant to avail himself of the advantage that the award gives him in a court of law. So the question is reduced to this: Is there any thing to affect the conscience of the defendant, growing out of unfairness or fraud on his part, or of misconduct or corruption on the part of the arbitrators? “Corruption or partiality are admitted grounds for setting aside an award; so is a mistake into which the arbitrators have been led by undue means, or into which they have been permitted to fall by the fraudulent conceal
 
 *469
 
 ment of the party or his agent. A court of equity does not in such cases correct the award, or revise the decision of the arbitrators, but holds it to be against conscience to take advantage of the award in seeking to enforce it by an action at law, or by using it as a plea in bar of a bill for an account
 
 Eaton
 
 v. Eaton,
 
 supra.
 

 The matters charged in the bill, at least in this stage of the cause, where the answer is to be taken as true, do not make a case for the interference of this Court. The plaintiffs allege that the defendant did not execute a bond for the performance of the award, and so was guilty of fraud. This is denied, and the defendant sw'ears he did execute a bond, which was duly filed with the arbitrators, and of which the plaintiffs had notice.
 

 They allege that the arbitrators refused to allow the plaintiff Gardner to appear before them and make the necessary explanations, but came to their conclusions from the
 
 expcvrte
 
 statements of the defendant. This is denied, and a satisfactory explanation is set outin the answer; for the defendant says, that the matters connected with the copartnership, a settlement of which was the object of the reference, appeared, or ought to have appeared, upon the books, which had been kept by Gardner; that the task imposed upon the arbitrators was mainly that of finding out from the books how the balance stood, which was not easily done because of the very loose and unskilful manner in which they had been kept; that while thus engaged, they did not allow either of the parties to appear before them; that on the 19th July, 1856, having made out a rough estimate, they made the result known to the parties, and notified them to attend and suggest any mistakes or corrections, or alterations, that ought to be made. This was assented to. Gardner accordingly went before them, and at his instance, several alterations were made. Afterwards, the defendant went before them and pointed out several mistakes into which they had fallen, owing to the confused manner in which the entries had been made, but the correction of these mistakes was in favor of Gardner.
 

 
 *470
 
 They allege several mistakes, and insist that the errors are so gross as to raise a presumption of corruption or misconduet. The answer admits these mistakes ; for instance, charging interest in favor of the defendant some five months before he was entitled to it and the like.
 

 Mistakes, such as these, do not furnish an inference of misconduct; they are all fairly attributable to the condition of the books, and we are satisfied that the arbitrators acted fairly, and devoted much labor to the investigation, with a single eye to the truth, and a conscientious desire to do justice.
 

 They allege that the arbitrators exceeded their authority, and took into the account matters not submitted. This is denied. They allege that the award is uncertain and not final. Such objections apply more properly to awards made under a rule of court, where a degree of certainty is necessary to enable the court to enter up judgment. In awards under a submission by agreement
 
 in pais,
 
 so much certainty is not required. In respect to its not being final, the particular mainly relied on is that the award does not provide for a conveyance or release of the defendant’s interest in the whole tract of land. This had been sufficiently provided for in the articles which the parties adopted as the basis of the agreement to refer the matters to arbitration. The same remarks are applicable to the other particulars relied on as showing that the award is not final. A further answer to this objection is this: the supposed want of certainty and finality is not a matter that affects the conscience of the party, and may be made the subject of consideration as well in a court of law as in equity. It would seem that in either court, an award would be deemed sufficiently certain and final, if it be as much so as the nature of the several matters involved in the controversy are susceptible of, and the condition of things makes practicable.
 

 They allege that tho submission was revoked before the award was made and published. We. will not enter upon this subject, because if it be true in fact, the plaintiffs may avail themselves of it at law. It certainly does not affect the conscience ; and indeed, if it be true that the attempt to revoke
 
 *471
 
 was not until after the plaintiff Gardner was informed how the award would be, if he was not too late in the consideration of a court of law, he surely cannot expect such an objection to be received with favor by a court of conscience.
 

 And lastly, they allege that the arbitrators were not empowered to tax him with the costs of the arbitration. The same remarks apply to this objection. It may be that the arbitrators had no right to make any disposition of the costs in the absence of an express clause to that effect; but it is a strict legal objection, and we must refer it to the court of law where the action is pending, and the defendants may have the benefit of it by way of reducing the damages.
 

 Pee CukiAM, There is no error, and the decretal order is affirmed.